UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| ANGEL GONZALEZ, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:17cv1402(MPS) |
| v. | : | |
| | : | |
| KATHLEEN MAURER, ET AL., | : | |
| Defendants. | : | |

## **INITIAL REVIEW ORDER**

The plaintiff, Angel Gonzalez, is currently incarcerated at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). He initiated this action by filing a civil rights complaint against Department of Correctional medical staff members. He has filed a motion to amend, motion for default, and motion to expedite.

**I.      Motion to Amend [ECF No. 15]**

The plaintiff seeks to file an amended complaint to add ten new defendants and eliminate seven defendants named in the original complaint. Because the defendants have not filed an answer or motion in response to the complaint, plaintiff may amend his complaint once as a matter of right without seeking the court's permission to file an amended complaint. *See* Rule 15(a)(B), Fed. R. Civ. P. (permitting a party to "amend its pleading once as a matter of course . . . "if the pleading is one to which a responsive pleading is required, [either] 21 days after service of a responsive pleading or 21 days after service of a motion" to dismiss, for more definite statement or to strike, "whichever is earlier."). Accordingly, the motion to amend is granted. The Clerk shall docket the amended complaint attached to the motion to amend.

1

## II. Motion for Default [ECF No. 16]

The plaintiff seeks to default the defendants for failure to plead to the amended complaint. Because the amended complaint has not been served on the defendants, they are not in default for failure to plead. The motion for default is denied.

## III. Amended Complaint

### A. Legal Standards

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This requirement applies both where the inmate has paid the filing fee and where he is proceeding *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Although courts have an obligation to interpret "a *pro se* complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### B. Legal Claims and Defendants

The amended complaint is filed pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. The listed defendants are: Correctional Managed Health Care ("CMHC"), University of Connecticut Health Center ("UCONN"), the Department of Correction, Dr. Shafer, Dr. David M., Dr. Monica Farinella, Dr. Ricardo Ruiz, Dr. Carson Wright, Dr. Seramandis, Dr. Kathleen Maurer, Nurse Barbara Savoie, Nurse Vicki Scruggs, Nurse Ellen Durko, Health Services Administrator Brian Liebel, Nurse Tim Bombard, Nurse Mary Ellen Castro, and Health Services Administrator Rikel Lightner.

### C. Factual Allegations

In August 2009 at Corrigan Correctional Institution, the plaintiff sustained an injury to his face while playing basketball in the recreation yard. *See* Am. Compl. ¶ 17 & Exs. 1-8 at 2. X-ray scans taken of the plaintiff's face revealed a fracture of his left superior orbital rim and the left frontal sinus and several fracture fragments pressing on his left superior rectus muscle. *See id.* ¶ 18 & Exs. 1-8 at 2.

Prison officials transferred the plaintiff to UCONN for surgery. *See id.* ¶ 18 & Exs. 1-8 at 4. The plaintiff underwent surgery on August 15, 2009. *See id.* ¶ 19 & Exs. 1-8 at 4, 9. On August 17, 2009, hospital officials discharged the plaintiff to a Department of Correction facility. *See id.* ¶ 21 & Exs. 1-8 at 6.

Approximately one year after his surgery, the plaintiff began to experience itching and burning sensations on his head, face, neck, ears and chest. *See id.* ¶ 22. The plaintiff sought treatment from health care officials within the Department of Correction for these painful symptoms. *See id.* ¶ 23.

In March 2011, prison officials transferred the plaintiff to Cheshire Correctional Institution ("Cheshire"). *See id.* ¶ 24. At Cheshire, Dr. Ruiz was the plaintiff's treating physician. *See id*. He prescribed various ointments for the plaintiff's symptoms. *See id.*

In 2015 the plaintiff was suffering from neuropathic pain. *See id.* At some point in 2015, Dr. Ruiz prescribed Gabapentin to treat the plaintiff's symptoms. *See id.* The plaintiff sought further treatment because he was still experiencing itching, burning, and pain all over his head and face. *See id.* ¶ 25. On May 6, 2015, in response to a request from the plaintiff to be treated by a physician for his painful itching and burning symptoms, a nurse gave the plaintiff a bottle of acetaminophen and placed the plaintiff on a list to see a doctor. *See id.* ¶ 26 & Exs. 1-8 at 14-15. A physician saw the plaintiff on May 29, 2015, but did not treat him. *See id.*

In April 2016, the plaintiff sent multiple requests to the medical department at Cheshire seeking treatment for his neurological pain, but was never seen by a doctor. *See id.* ¶ 27 & Exs. 1-8 at 16-18. In March and April 2017, the plaintiff sent multiple requests to the medical department at Cheshire to be examined by a physician. *See id.* Exs. 1-8 at 19-22. On May 22, 2017, the plaintiff was treated by a physician. *See id.* Exs. 1-8 at 22.

At some point in 2017, the plaintiff began to experience alterations in his mental status as a result of his neuropathic pain symptoms. *See id.* ¶ 28. The plaintiff claims that the medication prescribed to treat his symptoms caused him to engage in abnormal thinking and an altercation

4

with his cellmate. *See id.* As a result, at some point in late May or early June 2017, prison officials transferred the plaintiff to Northern Correctional Institution. *See id.* & Exs. 1-8 at 22, 24.

Upon arrival at Northern, prison officers strip-searched and verbally assaulted the plaintiff. *See id.* ¶ 29. The officers confined him in a cell that was insect-infested, filthy, and cold. *See id.* ¶ 30. The ventilation system only blew cold air into his cell. *See id.* Prison officials subjected the plaintiff to strip searches every time he left his cell. *See id.*

On June 1, 2017, the plaintiff sent an inmate request to Nurse Barbara Savoie and sought treatment for the symptoms that he was experiencing as a result of his neuropathic pain condition. *See id.* ¶ 31. He requested to be seen by a physician. *See id.* On June 11, 2017, the plaintiff sent a request to Nurse Durko complaining about his symptoms and seeking to be seen by a doctor. *See id.* ¶ 32 & Exs. 1-8 at 24. Nurse Durko refused to treat the plaintiff herself. *See id.* She responded that the plaintiff had been put on the list to see the doctor, but it might not be until the end of the month. *See id.* At some point, a nurse informed the plaintiff that Dr. Wright would see him on June 27, 2017, but the appointment did not take place. *See id.* Exs. 1-8 at 25.

The plaintiff filed grievances on July 2, 2017, July 18, 2017 and August 9, 2017. *See id.* ¶ 33 & Exs. 1-8 at 28-35. Nurse Scruggs was aware of the grievances but took no action to assist the plaintiff or treat him. *See id.*

Dr. Wright did examine the plaintiff on July 18, 2017, and diagnosed him as suffering from a rash. *See id.* Exs. 1-8 at 34. The plaintiff disagreed with this diagnosis. *See id.* On July 25, 2017, a medical staff member placed the plaintiff's on a list to be seen by a physician in

5

response to the plaintiff's complaints about a cream that had been prescribed to treat his skin condition. *See id.* Exs. 1-8 at 26.

On August 1, 2017, the plaintiff wrote to Kathleen Maurer and Brian Liebel seeking treatment for his neuropathic pain symptoms. *See id.* ¶ 34 & Exs. 1-8 at 37-38. On September 27, 2017, the plaintiff received a response to his letter addressed to Brian Liebel from Nurse Tim Bombard. *See id.* & Exs. 1-8 at 40. Nurse Bombard informed the plaintiff that a medical provider at Northern had requested that he undergo a neurological evaluation. *See id.* In addition, Nurse Bombard informed the plaintiff that CMHC was responsible for his medical care and that he should contact Dr. Monica Farinella regarding his future medical concerns. *See id.* On October 17, 2017, the plaintiff received a response to his letter to Dr. Maurer from Nurse Mary Ellen Castro. *See id.* ¶ 35 & Exs. 1-8 at 39. Nurse Castro noted that since writing his letter, Dr. Wright had seen the plaintiff and had re-filled the prescription for Gabapentin. *See id.* Nurse Castro noted that a follow-up visit with Dr. Wright was scheduled for the month of October 2017. *See id.*

The plaintiff states that on September 27, 2017, Dr. Seramandis denied his request for a neurological evaluation. *See id.* ¶ 35. In addition, Dr. Wright did not examine him in October 2017. *See id.*

Neither Dr. Ruiz nor Dr. Wright is a neurologist. At no time was the plaintiff treated by a neurologist. *See id.* Yet Dr. Ruiz and Dr. Wright prescribed a medication to treat the plaintiff's neurological symptoms that had severe side effects. *See id.* ¶¶ 24, 28, 35 & Exs. 1-8 at 14.

The plaintiff sues the defendants in their individual and official capacities. *See id.* ¶ 10. He seeks monetary damages and declaratory and injunctive relief. *See id.* ¶¶ A-G.

### D. Discussion

The complaint is defective because it does not comply with Rule 8's pleading requirements. Rule 8(a)(2), Fed. R. Civ. P., requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise and direct." The purpose of Rule 8 is "to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciutti v. New York Trans. Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (citation omitted). In addition, "the rule serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (citation and quotation omitted). A plaintiff's statement of his or her claim "should be short because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)).

When a litigant does not comply with Rule 8's requirements, the court may strike any portion of the complaint that is redundant or immaterial pursuant to Rule 12(f), Fed. R. Civ. P. Alternatively, it may dismiss the complaint in its entirety in those cases "in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin*, 861 F.2d at 42. In *Salahuddin*, for example, the Second Circuit found "no doubt" that plaintiff's complaint, which "span[ned] 15 single-spaced pages and contain[ed] explicit descriptions of 20-odd defendants, their official positions, and their roles in

the alleged denials of Salahuddin's rights," failed to comply with Rule 8's requirement of a "short and plain statement." *Id.* at 43. Accordingly, the court stated that "the district court was within the bounds of discretion to strike or dismiss the complaint for noncompliance with Rule 8." *Id.*

In this case, the plaintiff's amended complaint is neither "short and plain" nor "simple." As indicated above, the plaintiff has named seventeen defendants. The amended complaint consists of eighteen, single-spaced, handwritten pages and forty pages of exhibits. It includes fifty-six paragraphs and asserts at least four different federal claims and two state law claims. It refers to incidents that occurred at multiple prison facilities as well as UCONN over an eight-year period.

The multiple claims included in the complaint involve allegations of medical malpractice, negligence, lack of informed consent regarding prescribed medication, deliberate indifference to medical needs, unconstitutional conditions of confinement, violations of due process and violations of the ADA and RA. These federal and state law claims asserted against three entities, two physicians from UCONN and twelve employees of the Department of Correction/CMHC are not all related to each other. Thus, the complaint also fails to meet the requirements of Fed. R. Civ. P. 20 governing party joinder.

Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and (b) "any questions of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v.*

*Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). As the Second Circuit has observed in the Rule 13 context,[1] whether a counterclaim arises out of the same transaction as the original claims depends upon the logical relationship between the claims and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The multiple claims in the complaint are unrelated and involve different individuals. Furthermore, the incidents from which the claims arise occurred at UCONN and three different correctional facilities within Connecticut over an eight-year period. Because these different claims do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," the amended complaint also fails to comply with Rule 20(a)(2), Fed. R. Civ. P. The amended complaint is dismissed for failure to comply with Rules 8 or 20 of the Federal Rules of Civil Procedure.

The Second Circuit has expressed a preference for adjudicating cases on their merits. Consequently, it will usually find failure to grant leave to amend an abuse of discretion where the sole ground for dismissal is that the complaint does not constitute a short and concise statement or comply with the rules governing joinder. *See e.g.*, *Salahuddin*, 861 F.2d at 42-43. Accordingly, the court will permit the plaintiff leave to file a second amended complaint that meets the pleading and joinder requirements of the Federal Rules of Civil Procedure.

**ORDERS**

**In accordance with the foregoing analysis, the court enters the following orders:**

---

[1] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims."

The Motion for Leave to File an Amended Complaint [**ECF No. 15**] is **GRANTED**. The Clerk shall docket the **Amended Complaint**. The Motion for Default **[ECF No. 16]** and the Motion for Expedited IRO [**ECF No. 7**] are **DENIED**.

The **Amended Complaint** is **DISMISSED without prejudice** for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. The plaintiff is hereby directed to file a second amended complaint that complies with Rules 8 and 20 of the Federal Rules of Civil Procedure, together with a motion to reopen, as instructed below. **The Clerk shall send the plaintiff an amended complaint form and a copy of the Amended Complaint with this order.**

As described above, the amended complaint includes the following five claims or sets of related claims:

    a.    **the negligence and malpractice claims relating to the surgery performed by Drs. Shafer and David M. in 2009.**

    b.    **the medical and lack of informed consent claims relating to the plaintiff's treatment and medications prescribed by Dr. Ruiz at Cheshire from 2011 to 2017.**

    c.    **the due process claims relating to the plaintiff's transfer to Northern and the conditions experienced by the plaintiff as a result of his confinement in the administrative segregation program at Northern.**

    d.    **the medical claims relating to the plaintiff's treatment at Northern in 2017 by Dr. Monica Farinella, Dr. Carson Wright, Dr. Seramandis, Dr. Kathleen Maurer, Nurse Barbara Savoie, Nurse Vicki Scruggs, Nurse Ellen Durko, Health Services Administrator**

---

*Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

**Brian Liebel, Nurse Tim Bombard, Nurse Mary Ellen Castro and Health Services Administrator Rikel Lightner.**

**e.     the ADA and RA claims relating to the plaintiff's claimed neurological disability.**

The second amended complaint should ONLY include one of the five claims or sets of related claims described above. The plaintiff may pursue any claim or set of claims that he does not include in the second amended complaint in a separate lawsuit.

The plaintiff shall clearly and concisely state his claim or related claims, the dates on which each incident occurred, refer to each defendant by first and last name or first initial of the first name and the last name and explain how each defendant was involved in the incident, claim or claims. If the second amended complaint fails to comply with the instructions in this order or the amended complaint form or the requirements of Rules 8 and 20 of the Federal Rules of Civil Procedure, it will be subject to dismissal with prejudice.

**The second amended complaint is due in thirty (30) days, and it shall be filed together with a motion to reopen.** In the meantime, the clerk is directed to enter judgment for the defendants and close this case.

SO ORDERED at Hartford, Connecticut this 12th day of January, 2018.

_____/s/_____
Michael P. Shea
United States District Judge