UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGEL GONZALEZ, <br>   Plaintiff, | : <br> : <br> : |
| v. | :    Case No. 3:17cv1402(MPS) |
| | : |
| KATHLEEN MAURER, ET AL., <br>   Defendants. | : <br> : |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Angel Gonzalez, who is currently confined at the MacDougall-Walker Correctional Institution, commenced this civil rights action by filing a complaint against fourteen State of Connecticut Department of Correction medical staff members. On January 12, 2018, the court granted the plaintiff leave to file an amended complaint, dismissed the amended complaint without prejudice for failure to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure, and permitted the plaintiff to file a second amended complaint that complied with Rules 8 and 20 by including only one of the five claims set forth in the complaint. *See* IRO, [ECF No. 17].

The plaintiff subsequently filed two motions to reopen and for leave to file a second amended complaint. On November 6, 2018, the court granted the plaintiff's second motion to reopen and for leave to file a second amended complaint and dismissed all of the allegations in the second amended complaint[1] against Director Maurer and Nurses Jane and John Doe, the Eighth Amendment deliberate indifference to medical needs claim against Dr. Ruiz pertaining to

---

[1] The only named defendants in the second amended complaint were Director of Health Services Kathleen Maurer, Dr. Ricardo Ruiz and Nurses Jane Ventrella and Jane and John Doe. *See* Second Am. Compl., [ECF No. 30].

the time period at Cheshire before 2014 and the time period at Cheshire from February 2015 to June 2016, and the Eighth Amendment deliberate indifference to health and safety claim against Dr. Ruiz. *See* Ruling and Order, [ECF No. 29], at 20. The court concluded that the Eighth Amendment claim that Dr. Ruiz was deliberately indifferent to the plaintiff's painful and itchy skin condition from some point in early 2014 to February 2015 and the Eighth Amendment claim that Nurse Ventrella was deliberately indifferent to the plaintiff's painful and itchy skin condition from May 4, 2017 to May 29, 2017 would proceed. *Id.*

Defendants Ventrella and Ruiz have filed a motion for summary judgment. The plaintiff has filed a response to the motion. For the reasons set forth below, the court will grant the motion for summary judgment in part and deny the motion in part.

**I.      Standard of Review**

A motion for summary judgment may be granted only if "there is no genuine dispute as to any material fact and [the moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law;" a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts

or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and . . . draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted).

The court reads a *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.   Facts[2]

On August 4, 2009 at Corrigan Correctional Institution ("Corrigan"), the plaintiff

---

[2] The relevant facts are taken from the Defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1"), [ECF No. 41-2]; Exhibits A-E, [ECF Nos. 41-4, 41-5 and 42], filed in support of the Local Rule 56(a)1 Statement; Plaintiff's Local Rule 56(a)2 Statement ("Pl.'s L.R. 56(a)2"), [ECF No. 45-2], Plaintiff's Affidavit ("Gonzalez Aff."), [ECF No. 45-1], Exhibits A-L in support of the Plaintiff's Local Rule 56(a)2 Statement and Affidavit, [ECF No. 45-3], and the

sustained an injury to the left side of his face while playing basketball in the recreation yard. Gonzalez Aff. ¶ 4. On August 14, 2009, the plaintiff underwent surgery at University of Connecticut Health Center to repair a fracture to his left superior orbital rim and left frontal sinus. *Id.* ¶¶ 4-5. Approximately a year after his surgery, the plaintiff began to experience painful tingling, itching, and burning sensations all over his head, face, ears, neck, and upper chest. *Id.* ¶ 6.

On March 10, 2011, prison officials at Corrigan transferred the plaintiff to Cheshire. *Id.* ¶ 8. In 2012, the plaintiff began to seek treatment for the painful tingling, itching, and burning sensations all over his head, face, ears, neck, and upper chest. *Id.*

On February 20, 2014, Dr. Ruiz prescribed an ointment, Triamcinolone Acetonide, to treat the plaintiff's symptoms. Gonzalez Aff., Ex. B, [ECF No. 45-3], at 5. On April 17, 2014, the plaintiff had an appointment with Dr. Ruiz due to his complaints of gastroesophageal reflux disease ("GERD"). Defs.' L.R. 56(a)1 ¶ 3. During the appointment, Dr. Ruiz noted the plaintiff's GERD had worsened and prescribed a medication to treat the symptoms. *Id.*, Ex. C, [ECF No. 42], at 6. Although the pertinent record is difficult to decipher, it also appears to reference "face/scalp" and to set forth a diagnosis of seborrheic dermatitis, *id.*, a skin disorder. Dr. Ruiz prescribed an ointment, Clotrimazole, to treat the plaintiff's skin condition. *Id.*; Gonzalez Aff. ¶ 13, Ex. B, [ECF No. 45-3], at 3-5.

On May 29, 2014, the plaintiff visited the medical department. Defs.' L.R. 56(a)1 ¶ 5. The plaintiff's medical records reflect that a health services provider did not renew the plaintiff's medications because the plaintiff did not pay the sick call charge. Gonzalez Aff. ¶ 15, Ex. G,

---

Exhibits filed in support of the Second Amended Complaint, [ECF No. 30], at 22-40.

[ECF No. 45-3], at 18-20. In response to the plaintiff's written request for treatment by a physician for his painful and itchy face and scalp condition, a nurse met with the plaintiff in the medical department on August 1, 2014. Defs.' L.R. 56(a)1 ¶ 6; Gonzalez Aff. ¶ 16. After speaking to the plaintiff, the nurse placed the plaintiff on a list to see a physician. Gonzalez Aff. ¶ 16, Ex. G, [ECF No. 45-3], at 19.

On August 13, 2014, the plaintiff had an appointment with Dr. Ruiz. Gonzalez Aff., ¶ 15, Ex. C, [ECF No. 42], at 7; Ruiz Aff., Ex. A, [ECF No. 41-4], at ¶ 15. The plaintiff requested re-fills of his medications. *Id.* Later that day, Dr. Ruiz entered orders to re-fill his prescriptions for Tums, Witch Hazel, Triamcinolone Acetonide cream, and Ocean Mist. Gonzalez Aff. ¶ 15, Ex. G, [ECF No. 45-3], at 20. On August 15, 2014, Dr. Ruiz discontinued the prescription for Triamcinolone Acetonide and re-prescribed Clotrimazole, to treat the plaintiff's skin conditions. *Id.*

On September 10, 2014 and On October 31, 2014, the plaintiff had appointments in the medical department regarding an injury that had caused him to suffer from blurred vision. Defs.' L.R. 56(a)1 ¶¶ 8-9; Ex. C, [ECF No. 42], at 4-5. On February 4, 2015, a medical provider met with the plaintiff. Defs.' L.R. 56(a)1 ¶ 12; Ex. C, [ECF No. 42], at 3. The plaintiff complained that the medication that Dr. Ruiz had prescribed for GERD was ineffective and sought to be seen by a doctor. *Id.*

On February 20, 2015, the plaintiff had an appointment with Dr. Ruiz. Pl.'s L. R. 56(a)2 ¶ 13; Gonzalez Aff. ¶ 22, Ex. F, [ECF No. 45-3], at 16-17. The plaintiff complained of an itchy and painful scalp and acid reflux. *Id.* Dr. Ruiz noted that lotion had not been effective in alleviating the plaintiff's itchiness. Gonzalez Aff. ¶ 22, Ex. F, [ECF No. 45-3], at 16. He

5

diagnosed the plaintiff as suffering from neurogenic pain as a result of a surgical procedure and prescribed Neurontin to be taken for six months. *Id.* at 16-17. He also re-prescribed Clotrimazole ointment to be used for six months. *Id.*

On May 4, 2017, the plaintiff filed a Request for Health Service Review. Defs.' L.R. 56(a)1 ¶ 16. The Request was written in Spanish. Gonzalez Aff., Ex. L, [ECF No. 45-3], at 40. On May 5, 2017, Nurse Ventrella returned the Request to the plaintiff marked – Devuelto sin disposicion - returned without disposition. *Id.* The plaintiff did not file a Health Services Review regarding the conduct of Nurse Ventrella in responding to his May 4, 2017 Request. Defs.' L.R. 56(a)1 ¶ 18.

On May 30, 2017, a nurse examined the plaintiff due to his complaints of an itchy and painful scalp. Second Am. Compl., [ECF No. 30], Ex A, at 38-39. The plaintiff explained that he had experienced the maximum relief from Neurontin and sought to be prescribed a different medication to treat his symptoms. *Id.* The nurse referred the plaintiff to be seen by a physician on May 31, 2017. *Id.* On June 1, 2017, prison officials at Cheshire transferred the plaintiff to Northern Correctional Institution. Gonzalez Aff., ¶ 27, Ex. L, [ECF No. 45-3], at 35.

**III.  Discussion**

Defendants Ruiz and Ventrella raise three arguments in support of their motion for summary judgment. They contend that the plaintiff did not exhaust available administrative remedies as to the claims against them, that the plaintiff has failed to support his claim of deliberate indifference to his skin condition, and that they are entitled to qualified immunity. I address each argument below.

6

## A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "such administrative remedies as are available" before bringing an "action ... with respect to prison conditions." The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Furthermore, the PLRA requires "proper exhaustion" which includes complying with all "procedural rules," including filing deadlines, as defined by the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006).

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court rejected judicially created exceptions to the PLRA's exhaustion requirement. *See id.* at 1862 ("Courts may not engraft an unwritten special circumstances exception onto the PLRA's exhaustion requirement.") (internal quotation marks omitted). The Court concluded that the PLRA includes a single "textual exception" – that an inmate must only exhaust remedies that are "available" to him or her. *Id.* at 1858. Thus, aside from the unavailability of remedies to a prisoner, there are "no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" *Id.* at 1856. The Supreme Court described three scenarios in which administrative procedures are officially adopted by a prison facility but are not capable of use to obtain relief for the conduct complained about, and therefore are unavailable. *Id.* at 1859. First, an administrative remedy may be

unavailable when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." *Id.* (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Failure to exhaust administrative remedies pursuant to the 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Thus, it is defendants' burden to prove that an inmate did not exhaust his or her claim prior to filing the action in court. *See Williams v. Priatno*, 829 F.3d 118, 126 (2d Cir. 2016).

Administrative remedies for medical, mental health, and dental claims are set forth in State of Connecticut Department of Correction Administrative Directive 8.9, entitled Administrative Remedy for Health Services. *See id.* 96(4)(L); Def.'s L.R. 56(a)1, Ex. B, Attach. A, [ECF No. 41-5] (Admin. Dir. 8.9, in effect as of July 24, 2012). Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the medical, dental or mental health care of an inmate: (1) diagnosis and treatment issues, and (2) administrative issues involving a procedure, practice, policy, or improper conduct of a health services provider. *See id.* at 8.9(9)(A) & (B).

Before filing a request for Health Services Review of either a diagnosis or treatment issue or an administrative issue, an inmate must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. *See id.*

8

at 8.9(10). The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. *See id.* If an inmate is not satisfied with the informal resolution of his or her issue, he or she may file an Inmate Administrative Remedy form, CN 9602, seeking a Health Services Review. *See id.* at 8.9(11) & (12).

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental, or mental health condition, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, as appropriate, as soon as possible. *See id.* at 8.9(11)(A). If, after the appointment, the physician, dentist, psychologist, or psychiatrist concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *See id.* If the physician, dentist, psychologist, or psychiatrist reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *See id.* at 8.9(11)(B).

If the inmate seeks review of an administrative issue, the Health Services Coordinator is required to evaluate, investigate, and decide the matter within thirty days. *See id.* at 8.9(12)(A). If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision. *See id.* at 8.9(12)(B). The health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal." *See id.* at 8.9(12)(C). If the issue being raised "relates to a health services policy of the Department, the inmate may appeal

to the DOC Director of Health Services within ten business days of" receiving the decision from the health services provider or designated facility health services director. *See id.* at 8.9(12)(D).

There is no dispute that these administrative remedies were in effect in the State of Connecticut Department of Correction at the time of the alleged deliberate indifference to the plaintiff's medical need. The plaintiff does not dispute that he was familiar with the Department of Correction's Inmate Administrative Remedies procedures available to him during the time periods in question.

The defendants have submitted the declaration of Valerie Boykins who is a Medical Records Specialist at Cheshire. Ms. Boykins declares that she searched for Health Services Review requests filed by the plaintiff during the period from January 2014 to February 2015 and between May 2017 to June 2019. *See* Def.'s L.R. 56(a)1, Ex. B, Boykins Decl., ¶ 7, [ECF No. 41-5], at 3. Ms. Boykins found no Health Services Review requests submitted by the plaintiff during the time period of January 2014 and February 2015. *Id.* ¶ 9. She found only one Health Services Review request filed by the plaintiff during the period from May 2017 to June 2019. *Id.* ¶ 8. On May 4, 2017, the plaintiff filed a Health Services Review request claiming that the ointment or cream prescribed to treat his skin condition was not working. *Id.* He sought to see a physician. *Id.* On May 5, 2017, Nurse Ventrella marked the Health Services Review as returned without disposition for failure to attempt an informal resolution. *Id.* The plaintiff did not file a request for Health Services Review pursuant to Administrative Directive 8.9 regarding the conduct of Nurse Ventrella in processing his May 4, 2017 Health Services Review request. *Id.* ¶ 10.

### 1. Nurse Ventrella

The plaintiff has submitted a copy of an Inmate Request addressed to a nursing supervisor at Cheshire regarding the May 5, 2017 response by Nurse Ventrella to his Health Services Review request seeking an appointment with a physician for his skin condition. Gonzalez Aff., ¶ 27, Ex. J, [ECF No. 45-3], at 27. The Request is dated May 15, 2017. *Id.* The plaintiff states that he did not receive a response to the Request prior to his transfer to Northern Correctional Institution on June 1, 2017. *Id.* The plaintiff claims that when he arrived at Northern, he spoke to the Health Services Review Coordinator about filing a Health Services Review request regarding the conduct of Nurse Ventrella. *Id.* The Health Services Review Coordinator informed him that he would need a response from the nursing supervisor at Cheshire to his May 15, 2017 Inmate Request before he could file a Health Services Review request against Nurse Ventrella. *Id.* The plaintiff decided that it would take too long to get a response to the Inmate Request directed to Nurse Ventrella's supervisor and chose to pursue/focus on securing medical treatment for his skin condition from the medical providers at Northern instead. *Id.*

The plaintiff has asserted no facts to suggest that the administrative remedies for medical treatment claims, as set forth in Administrative Directive 8.9, were unavailable to him in May 2017 or after his transfer to Northern on June 1, 2017. Rather, he concedes that he did not fully exhaust his available administrative remedies as to his claim concerning Nurse Ventrella's response to his May 4 Health Services Review request prior to filing this action. The motion for summary judgment is granted on the ground that the plaintiff did not exhaust his administrative remedies as to his claim that Nurse Ventrella was deliberately indifferent to his medical need in

May 2017, by refusing to schedule him for an appointment with a physician to evaluate and treat his skin condition.

### 2. Dr. Ruiz

The plaintiff has submitted one page of a copy of a request for Health Services Review filed by him on October 17, 2014 in which he states that he has experienced itching and burning sensations on his face, head, neck, and upper chest for several years. *See* Pl.'s L.R. 56(a)2 ¶ 15; Gonzalez Aff. ¶ 24, [ECF No. 45-1]; Ex. I, [ECF No. 45-3], at 24-25. In that Health Service Review request, the plaintiff acknowledged that Dr. Ruiz had prescribed him two different creams or ointments for his symptoms but stated that the creams were not effective. *See id.*; Ex. I, [ECF No. 45-3], at 25. The plaintiff sought to be prescribed a skin lotion and to be evaluated by a neurologist or dermatologist. *See id.* The plaintiff did not receive a response to the October 17, 2014 Health Services Review request. *See id.*

The court concludes that the plaintiff's sworn averment that he submitted the October 17, 2014 Health Services Review request creates an issue of material fact as to whether he properly and fully exhausted his available administrative remedies regarding his claim of deliberate indifference against Dr. Ruiz. Accordingly, the motion for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies as to his claim that Dr. Ruiz was deliberately indifferent to his itchy and painful skin condition during the period from January 2014 to February 2015 is denied.

### B. Deliberate Indifference to Medical Needs – Dr. Ruiz

Dr. Ruiz argues that he was not deliberately indifferent to the plaintiff's painful and itchy scalp and skin condition. After sentencing, the Eighth Amendment applies to a claim of

deliberate indifference to a serious medical need. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners" as well as serious "mental health care" needs of prisoners) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 and citing *Langley v. Coughlin,* 888 F.2d 252, 254 (2d Cir.1989)). To state a claim for deliberate indifference to a serious medical need or condition, a plaintiff must satisfy two requirements.

The objective prong requires a showing that the plaintiff's medical need or condition was "a serious one." *Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003). Factors to be considered in determining a condition's seriousness include: whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether it "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second prong is subjective. Under this prong, a prison official must have been actually aware that his or her actions or inactions would cause a substantial risk of serious harm to the inmate. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* at 380. Recklessness requires more than mere negligent conduct. *See id.* Negligence that constitutes medical malpractice does not rise to the level of deliberate indifference. *See Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference) (citation omitted).

Dr. Ruiz does not contest that the plaintiff's painful and itchy skin condition was serious

13

and met the objective prong of the Eighth Amendment standard. Rather, he contends that he was not deliberately indifferent to that condition.

Dr. Ruiz claims that he did not become aware of the plaintiff's complaints of a painful and itchy skin condition and scalp until February 20, 2015. He contends that he could not have been deliberately indifferent to the condition absent any knowledge of the plaintiff's complaints.

The plaintiff's medical records reflect that as early as February 20, 2014, Dr. Ruiz had prescribed an ointment to treat the plaintiff's skin condition/symptoms. *See* Gonzalez Aff., Ex. B, [ECF No. 45-3], at 5. On April 17, 2014, although not acknowledged by Dr. Ruiz in his Declaration, the plaintiff's medical records appear to reflect an entry by Dr. Ruiz that he observed the plaintiff's skin condition, diagnosed it as seborrheic dermatitis, and prescribed Clotrimazole to be applied to the plaintiff's face and scalp. *Id.* at 4. On August 13, 2014, Dr. Ruiz renewed the prescription for Triamcinolone, and on August 15, 2014, he again prescribed Clotrimazole. Furthermore, Dr. Ruiz suggests, in his Declaration, that as of August 13, 2014, he had prescribed Neurontin to treat the plaintiff's painful and itchy skin conditions. *See* Defs.' L.R. 56(a)1 ¶ 8, Ex. A., Ruiz Decl. ¶ 15. This contradicts any suggestion that he was unaware of the plaintiff's symptoms until February 2015.

The plaintiff avers that in April 2014 and August 2014, he informed Dr. Ruiz that he suffered pain and itchiness in his scalp and head and that the creams/ointments that he had prescribed did not effectively alleviate the symptoms. Gonzalez Aff. ¶¶ 13, 15. He describes the painful burning and itching sensations on his scalp, face, neck and upper chest as similar to the burning effects of mace on one's skin or lacerations from broken glass. *Id.* ¶ 7. Furthermore, the plaintiff's medical records, submitted by both Dr. Ruiz and the plaintiff, belie Dr. Ruiz's

14

contention that he was unaware of the plaintiff's painful and itchy skin condition until February 20, 2015. Thus, Dr. Ruiz has not met his burden of demonstrating the absence of a material fact in dispute regarding his knowledge of and deliberate indifference to the plaintiff's symptoms prior to February 20, 2015. Nor has Dr. Ruiz addressed the issue of whether the decision to continue to prescribe topical skin creams rather than refer the plaintiff to a specialist in view of the plaintiff's continued complaints that the creams were ineffective in alleviating the pain and itchiness constituted an exercise of medical judgment or deliberate indifference. The disputed issues of fact with regard to whether Dr. Ruiz was aware of the plaintiff's symptoms prior to February 20, 2015 and whether he pursued a course of treatment that constituted deliberate indifference to a serious medical need preclude summary judgment in favor of Dr. Ruiz on the subjective prong of the Eighth Amendment standard. Accordingly, the motion for summary judgment is denied as to the Eighth Amendment deliberate indifference claim against Dr. Ruiz.

### C.     Qualified Immunity

Dr. Ruiz argues that he is entitled to qualified immunity because he acted reasonably in response to the plaintiff's needs given that he did not have knowledge of the plaintiff's skin condition until February 2015. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007)). As indicated above, there remain genuine issues of fact as to whether Dr. Ruiz was aware of the plaintiff's chronically painful and itchy skin condition in 2014 and early 2015 and whether his decision to continue to prescribe

15

certain medications rather than referring the plaintiff for further diagnosis, testing or treatment constituted deliberate indifference.  Because issues of disputed fact preclude a determination as to the reasonableness of Dr. Ruiz's conduct, he is not entitled to qualified immunity.  The motion for summary judgment is denied on this ground.

**IV.     Conclusion**

The Motion for Summary Judgment, [**ECF No. 41**], is **GRANTED** as to the deliberate indifference to medical needs claim against Nurse Ventrella and **DENIED** as to the deliberate indifference to medical needs claim against Dr. Ruiz.

SO ORDERED at Hartford, Connecticut, this 21st day of January, 2020.

/s/
Michael P. Shea
United States District Judge